UNITED STATES DISTRICT COURT

DISTRICT COURT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:3:11-CR-00418-MA |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION FOR PRETRIAL RELEASE |
| v. | |
| EZEQUIEL CASTRO-INUNZA, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

      Defendant Ezequiel Castro-Inunza ("Defendant") moves for release pending trial on charges of illegally reentering the United States of America without authorization from the Attorney General. The United States of America (the "Government") objects to Defendant's pretrial release and asks the court to detain the Defendant until his trial on May 15, 2012. Because Defendant does not pose a serious risk of flight given the conditions the court can impose for his pretrial release, Defendant's

motion (Dkt. #20) is GRANTED and Defendant is ordered RELEASED pending his trial in this case.

*Background*

The Defendant came to the United States from Mexico in the late 1980s as a temporary resident under the Special Agricultural Worker program. Under that program, temporary residents would automatically become lawful permanent residents as of December 1, 1990.

In March 1989, Defendant was charged with possession of heroin with intent to sell, an aggravated felony. On the advice of his attorney, Defendant pleaded guilty to the charge. Neither his attorney nor the court advised Defendant that pleading guilty to the charge would almost certainly result in his deportation from the United States. The trial judge accepted Defendant's plea and sentenced him to four years imprisonment. As a result of his conviction for an aggravated felony, the predecessor agency to ICE, the Immigration and Naturalization Service, revoked Defendant's green card, took him into custody, and deported him in January 1994.

In September of 2011, Defendant was found in Umatilla, Oregon, and arrested. ICE issued a Notice of Intent to reinstate a deportation order against him. The Defendant signed that form, in which he indicated he did not wish to make a statement contesting the determination that he was unlawfully in the United States. Subsequently, Defendant was charged in the District of Oregon with illegal reentry into the United States without permission of the Attorney General. He now requests release pending his trial, which is set to begin May 15, 2012.

Defendant has filed a petition for a writ of *error coram nobis* to vacate his drug conviction and reinstate his lawful permanent resident status on the basis of the U.S. Supreme Court's ruling in *Padilla v. State of Kentucky*, — U.S. —, 130 S. Ct. 1473, 1486 (2010). In *Padilla*, the Court determined that failure by an attorney to advise the client of the possibility of deportation upon

entering a guilty plea to a criminal charge constitutes ineffective assistance of counsel in violation of the Sixth Amendment. To date, Defendant's petition has been denied, although he continues to pursue legal proceedings to obtain reinstatement of his permanent resident status. Defendant has not sought to stay or vacate the ICE deportation order or detainer lodged against him.

*Standards*

The Bail Reform Act of 1984 ("Act") requires the court to release the accused pending trial if there are conditions or a combination of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) (2008). The court must hold a hearing to determine whether such conditions exist that will reasonably assure a defendant's appearance. 18 U.S.C. § 3142(f). In making its determination, the court must "take into account all available information concerning":

> (1) [T]he nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act "prescribes pretrial release 'unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.' " *United States v. Medenbach*, Case No. 96-30168, 1997 WL 306437, at *2 (9th Cir. June 5, 1997), quoting 18 U.S.C. § 3142(b). *See also* 18 U.S.C. § 3142(c)(1)(B) (requiring the court to impose the "least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required[.]"). In a case such as the current case where the nature of the crime does not invoke the statutory presumption of detention, a defendant should be released and in only rare cases be denied release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Further, that a defendant is an alien may be taken into account, but alienage does not by itself "tip the balance either for or against detention." *Id.* (citation omitted). In making a release determination, "doubts regarding the propriety of release are to be resolved in favor of defendants." *Id. See also* United States v. Nguyen, Case No. CR07-344RSL, 2008 WL 4163135, at * (W.D. Wash. Sept. 4, 2008) (quoting *Townsend*).

*Discussion*

The Government opposes Defendant's release on the ground that he presents a serious risk of flight. Specifically, the Government argues that if this court orders his release, the ICE detainer requires Defendant's immediate transfer to ICE custody and, if that occurs, Defendant likely will be deported. Deportation will make Defendant unable to appear for trial or any other proceedings in the case. Because the district court has no authority to vacate or stay an ICE detainer or deportation order, the Government contends there are no conditions the court can impose to reasonably assure Defendant's appearance. Thus, under the statute, the Defendant should be detained.

The Defendant responds that under the factors the court must consider, he not a "serious risk of flight" but instead a suitable candidate for release on conditions. The Defendants cites his strong ties to Las Vegas, where he, his mother, his wife, and his children live and have lived for many years, and where his wife has owned a business for the past ten years. Further, he claims strong incentive to stay in the country to fight his deportation proceedings that are based on his twenty-two year-old felony conviction. That conviction is his only criminal record of any kind; otherwise, he has no criminal record. Far from being a flight risk, Defendant argues, he has every reason to remain in the United States if released. As to the ICE detainer, Defendant states he is taking steps to address the detainer and his deportation order in separate proceedings with separate counsel. He contends, however, that the ICE detainer is only one factor in the court's consideration – it does not require he be automatically detained. Defendant urges the court to base its release decision by applying the flight risk factors in the statute to the particular facts of his case.[1]

At hearing on Defendant's motion, the court questioned whether, in determining the "risk of flight," the Act contemplated a defendant's voluntary flight rather than a defendant's "compelled flight" by an external factor such as an ICE detainer. The Government argues the Act included such factors because of the language's focus is on assuring a defendant's appearance. Defendant argues that the Act presumes a defendant is to be released if there are conditions that will prevent or minimize the opportunity or incentive for a defendant to voluntarily flee to avoid prosecution. In their respective briefs filed prior to hearing, neither the Government nor Defendant cited cases that address this specific interpretation of the Act.

---

[1] The Government does not contend that the Defendant is, or should be detained on the basis of presenting, a danger to the community.

Page 5 - ORDER ON DEFENDANT'S MOTION FOR PRETRIAL RELEASE          {RMD}

First, the court must determine whether Defendant presents a serious risk of flight. On the record before the court, the factors the courts must consider clearly favor Defendant and do not support the Government's burden of showing that Defendant is a serious risk to flee if released, a burden the Government must carry by a "clear preponderance." *See United States v. Motamedi,* 767 F.2d 1403, 1406-07 (9th Cir.1985). To the contrary, the evidence establishes that Defendant is not likely to flee. He has strong ties to this country, as his wife of nineteen years, his three children, and his mother all live in Las Vegas, Nevada, in the United States. His criminal record contains no crimes of violence or any crime other than the felony conviction he is challenging under *Padilla*. His current charge is illegal re-rentry, a crime the elements of which, and the facts upon which it is based here, involve no violence, terrorism, weapons possession or use, drug distribution or use, minor victims, or offense to person or property. No information appears in the record that negatively reflects on Defendant's character or mental condition, that he is or has been a drug user or abuser of alcohol, or that he has failed to appear for any court proceedings at which his attendance has been required. And although the weight of the evidence to support the current charge against Defendant is strong – he was found in the United States after having been deported – that factor is only one of many the court must consider and is a factor which the court is to give the least weight in making its release determination. *See United States v. Townsend*, 897 F.2d at 994 ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors."), quoting *United States v. Motamedi,* 767 F.2d at 1408.

Two observations are appropriate given the facts of this specific case. First, and as the court observed at hearing, the Government's position on flight is undermined by Defendant's demonstrated desire to remain in this country. He sought and achieved permanent resident status,

has been persistent in pursuing legal proceedings to overturn the felony conviction that resulted in revocation of permanent resident status, and – to the Government's understandable frustration – apparently keeps coming back to this country despite the Government's efforts to keep him out.

Second, the last fact of these considerations should not be understood to mean that illegal entry or re-entry into this country is a favorable fact which should be considered in determining whether a defendant is a flight risk. Rather, its consideration here is decidedly case-specific, given the Government's election to seek Defendant's detention not on any fact that suggests Defendant, if released, is likely to voluntarily leave the United States but instead solely on the basis of the ICE detainer lodged because of the pending deportation order. On this point, the court notes that the risk of flight is further diminished because, unlike the cases the Government cites to support its position, Defendant here is not charged with serious felonies involving drugs or violent crimes and their concomitant possible lengthy sentences which would provide incentive for flight to avoid prosecution for those crimes. Again, the only charge against Defendant faces here is the illegal re-entry charge, and it is the basis of that charge Defendant seeks to overturn through the collateral proceedings he is currently is pursuing so that he might gain reinstatement of his permanent resident status. All the facts in the record show that Defendant intends to stay in this country to fight the current charge as part of his greater goal of reclaiming his lawful status.

In sum, on the fact record in this case, Defendant can be released with conditions to adequately address the risk of flight.

The second question is whether, under the Act, the existence of an ICE detainer lodged against Defendant is a sufficient counter to the collective weight of these factors that compels Defendant's detention. The starting point is the language of the Act. An ICE detainer is not listed

in the Act as a ground for mandatory detention of a pretrial defendant. The Act specifies that certain crimes shall create a rebuttal presumption of detention, but illegal entry and illegal re-entry are not among the presumption crimes listed. Furthermore, an ICE detainer is not expressly included in section 3142(g) among the various listed factors the court must consider in making a determination whether there are conditions that will reasonably assure a defendant's appearance. And, of those factors the court must consider in a release determination, all of them require the court to evaluate a defendant's desire or motivation to leave or remain in the United States.

Thus, Congress identified certain charged crimes that would deprive a defendant of the presumption of release and listed specific factors to be weighed in determining detention, and an ICE detainer is absent from both lists. Congress could have, but declined to, give an ICE detainer determinative effect or greater weight in a detention decision. The court therefore concludes that an ICE detainer is but one of a number of considerations the court must take into account in determining whether a pretrial defendant should be released or detained.

The conclusion that an ICE detainer is not entitled to greater or dispositive weight is bolstered by two additional considerations. First, subsection 3142(d)(1)(B) requires the risk of flight be assessed in determining whether to detain a pretrial defendant who lacks lawful immigration status at the time of arrest. That subsection provides for the temporary detention of any person who, at the time he allegedly committed the charged crime, was not a citizen or lawful resident of the United States "and . . .may flee or pose a danger to any other person or the community[.]" Even in this subsection, the clear purpose of which is to assess the release of defendants without citizenship status, a pretrial defendant's lack of citizenship or lawful resident status is not a circumstance that automatically invokes detention; the risk of flight still must be evaluated before detention can be

ordered. Second, such a conclusion is consistent with the Ninth Circuit's observation that a defendant's alienage does not by itself "tip the balance either for or against detention." *United States v. Townsend*, 897 F.2d at 994.

Furthermore, in *United States v. Jocol-Alfaro*, Case No. CR 11-4133-DEO, 2011 WL 6938349 (N.D. Iowa Oct. 31, 2011), the court granted defendants pretrial release notwithstanding the pendency of an ICE detainer lodged against them. Defendants, natives of Guatemala, had been charged with making false claims of United States citizenship, using false Social Security numbers, and using false identification. 2011 WL 6938349, at *1. The United States argued that defendants "must be detained pending trial because of the [ICE] detainers against them. *Id*.

The court's inquiry was two-pronged: "first, whether the Government has shown, by a preponderance of the evidence, the existence of a serious risk that the defendant will flee; and second, even if such a risk exists, whether the Government has shown there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required." *Id*. The court found the defendants were not risk of flight because of their ties to the community, lack of a criminal record, and the non-violent nature of the crimes charged against them. *Id*. The court concluded its inquiry on the first prong by finding that the relevant factors under section 3142(g) "weighs in favor of the defendants' pretrial release on appropriate conditions."

Turning to the ICE detainer, the court noted the United States' argument that if released, the ICE would take defendants into custody based on its detainer, "possibly deporting them before they are brought to trial on the present charges." *Id*. at *2. The court rejected this possibility as a reason to detain the defendants, citing among its reasons that application of the risk of flight prong turns on the defendant's voluntary failure to appear and Congress's choice to omit an ICE detainer as a

Page 9 - ORDER ON DEFENDANT'S MOTION FOR PRETRIAL RELEASE     {RMD}

dispositive detention factor:

> This court previously acknowledged "the complicated interplay between the Bail Reform Act of 1984, which sets out the procedure and parameters for pretrial release and detention, and statutes requiring the deportation of persons present in the United States illegally." *United States v. Villanueva–Martinez,* 707 F. Supp. 2d 855, 857 (N.D. Iowa 2010). In *Villanueva–Martinez,* the defendant was charged with, among other things, making a false claim of United States citizenship and using a false Social Security number. *Id.* at 856. There, it was undisputed that, if the court released the defendant from the custody of the United States Marshal, he would be taken into custody by ICE, where he would face pending removal proceedings and could, in fact, be deported prior to having to face trial on the pending charges and potential imprisonment. *Id.* at 857. This court found, however, that "the Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him." *Id.* (quoting *United States v. Montoya-Vasquez,* No. 4:08CR3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009)). "The 'risk' of an order of removal is one over which this court has no control, and whether the hearing on defendant's request for cancellation of removal is rescheduled, and if so, the merit of such request, are issues that are simply not for this court's review." *Id.* (quoting same). This court further noted the court's conclusion in *Montoya-Vasquez* that " 'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will. If the government – through ICE or any other authority – prevents his appearance, he has not 'failed' to appear." *Id.* (quoting *Montoya-Vasquez,* 2009 WL 103596, at *5).
>
> In sum, "[t]he court will not speculate on the possible results of pending immigration proceedings involving the defendant[s]." *Id.* at 858. "[T]he risk of removal by ICE, if cognizable at all under the [Bail Reform] Act, cannot be determinative of the question of a defendant's eligibility for release." *Id.* (quoting *Montoya-Vasquez,* 2009 WL 103596, at *5). While the defendants' "illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor"; otherwise, "Congress's carefully crafted detention plan, set forth at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer." *United States v. Barrera-Omana,* 638 F. Supp. 2d 1108, 1111, 1112 (D. Minn. 2009). If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions." *Villanueva–Martinez,* 707 F. Supp. 2d at 857-58 (quoting *Montoya–Vasquez,* 2009 WL 103596, at *5). "Such a harsh result is nowhere expressed or even implied in the Bail Reform Act." *Id.* at 858 (quoting same).

*United States v. Jocol-Alfaro*, 2011 WL 6938349, at *2. The court concluded by finding that the United States had failed to prove "on the basis of the factors enumerated in the Bail Reform Act," that there were "no conditions of release that would reasonably assure the defendants' appearance as required," and ordered defendants released. *Id*. at *3.

      The material facts bearing on the release decision in *Jocol-Alfaro* are nearly on all fours with those present in this case, and the court's reasoning there applies here with equal validity. Here, as in that case, an ICE detainer is present but Defendant has demonstrated strong ties to the community, Defendant faces a pending charge that involves a non-violent crime, and he lacks an extensive criminal record of unrelated crimes involving violence, drugs, or danger to the community. Furthermore, Defendant here benefits from an additional fact not present for the defendants in *Jocol-Alfaro*: he was previously a lawful permanent resident and is currently involved in legal proceedings to reinstate that lawful status based on a recent change in the law. The *Jocol-Alfaro* court recognized that an ICE detainer is not a talisman which, if pending, mandates a defendant be detained; the Bail Reform Act requires the court to analyze the statutory risk factors – of which a defendant's alienage is merely one – and determine whether there are conditions which will reasonably assure the defendant's attendance for further proceedings by reducing the chance the defendant will voluntarily attempt to leave the United States. *See also United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (E. D. Wis. Feb. 27, 2008)(["D]efendant's status as a deportable alien does not mandate detention. Rather, he must 'be treated in accordance with the other provisions of [§ 3142], notwithstanding the applicability of other provisions of law governing release pending . . . deportation or exclusion proceedings.' § 3142(d). Thus, it would be improper to consider *only* defendant's immigration status, to the exclusion of the §3142(g) factors, as the government suggests.").

Finally, the court notes that the cases relied upon by the Government are distinguishable. Each case involved a pretrial defendant who posed a danger to the community if released and who, because of the nature of the charged crimes and their possible sentences, had ample motivation to flee the United States to avoid a lengthy sentence if convicted. As previously noted, there is no contention here that Defendant poses a danger to the community and the record establishes the strength of his motivation to remain in this country to pursue his lawful residence status.

For the reasons stated above, this court GRANTS the Defendant's request for pretrial release and orders the Defendant be released on conditions pending his trial.

IT IS SO ORDERED

This 14th day of May, 2012.

                                                         John V. Acosta
                                                        JOHN V. ACOSTA
                                               United States Magistrate Judge