IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

EZEQUIEL CASTRO-INZUNZA,

        Defendant.

Case No. 3:11-cr-00418-MA

OPINION AND ORDER

S. AMANDA MARSHALL
United States Attorney
District of Oregon
MICHELLE HOLMAN KERIN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

   Attorneys for Plaintiff

FRANCESCA FRECCERO
Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

   Attorney for Defendant

MARSH, Judge

   Defendant Ezequiel Castro-Inzunza previously moved for pretrial release pursuant to 18 U.S.C. § 3142 pending trial on one count of unlawfully reentering the United States in violation of

8 U.S.C. § 1326(a).   The Immigration and Customs Enforcement division of the Department of Homeland Security (ICE or DHS) has given notice by means of an ICE detainer that defendant's removal has been ordered under 8 U.S.C. § 1231.   Due to the ICE detainer, if defendant is released from custody by the U.S. Marshal, his custody will be transferred to ICE, and removal proceedings will begin. 8 U.S.C. § 1231(a)(2).

Following a detention hearing, Magistrate Judge John V. Acosta granted defendant's motion for pretrial release.   (ECF #24.)   On May 14, 2012, the government moved to stay the Release Order, which I granted.   Currently before me is the government's Motion for Review and Revocation of the Release Order.   (ECF #28.)   After careful consideration of the parties' briefing and the record as a whole, I reverse Judge Acosta's Release Order, and order defendant to remain in custody until trial now set for August 14, 2012.

## FACTUAL AND PROCEDURAL HISTORY

Defendant came to the United States from Mexico in the late 1980s as a temporary resident under the Special Agricultural Worker Program.   Under that program, defendant automatically became a lawful permanent resident as of December 2, 1990.

In March of 1989, defendant, who was then living in Nevada, was charged with possession of heroin with intent to sell, an aggravated felony.   On the advice of counsel, defendant pled guilty to the charge.   Based on the transcript of that proceeding, it

appears that neither his attorney nor the court advised defendant that pleading guilty would likely result in his removal from the United States.   On January 20, 1990, the trial judge accepted defendant's plea and he received a four year sentence.

Following his conviction, the Immigration and Naturalization Service (INS, the predecessor agency to ICE) began immigration proceedings.   It appears that there were two sets of immigration proceedings, occurring in 1993 and 1994.   In the 1993 proceedings, INS sought to deport defendant due to his felony conviction, but those proceedings were dismissed because his status was adjusted to "lawful permanent resident" after his conviction.   Thus, the proper proceeding was rescission of his lawful permanent resident status. In December of 1993, INS rescinded his lawful status.   In January of 1994, defendant asked an immigration judge to reconsider the Order of Rescission.   The judge denied the request, and defendant was removed following expiration of his sentence on January 19, 1994.

On August 17, 1994, with the assistance of Nevada counsel, defendant filed a Petition for Writ of *Error Coram Nobis* in state court seeking to withdraw his guilty plea based on his counsel's failure to advise him of the immigration consequences of his plea. The court denied his petition.   Defendant's appeal from that decision was rejected by the Nevada Supreme Court on December 19, 1995, based in part on then existing Ninth Circuit precedent.

Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988); Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir. 1976), cert. denied, 429 U.S. 895 (1976); (Defendant's Memo. of Law Supporting Release (ECF #20), p. 51-52).

On February 26, 2003, defendant reapplied for admission into the United States. On September 11, 2003, DHS denied defendant's request. Defendant was permitted 30 days to appeal that decision, but did not do so.

In September of 2011, defendant was found in Umatilla, Oregon, and arrested. On September 28, 2011, DHS provided defendant a "Notice of Intent/Decision to Reinstate Prior Order." The Reinstatement Order indicates that the government intends to reinstate its previous deportation order and remove defendant from the United States. (Plaintiff's Motion for Review (ECF #22-3) p. 1.) The Reinstatement Order provides that to contest the Reinstatement Order, defendant would need to provide a statement to an immigration officer. Defendant did not provide a statement. The Reinstatement Order also provides that there is no right to hearing before an immigration judge. Therefore, pursuant to the Reinstatement Order, ICE has reinstated its previous deportation order. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8.

In October of 2011, defendant was charged in the District of Oregon with unlawful reentry into the United States without permission of the Attorney General, violating 8 U.S.C. § 1326.

4 - OPINION AND ORDER

Because defendant was deported following a conviction for an aggravated felony, he faces a maximum penalty of 20 years. 8 U.S.C. § 1326(b)(2). At defendant's arraignment and preliminary detention hearing, defendant was detained as a flight risk.

On December 1, 2011, defendant's Nevada counsel filed an action in state district court again attempting to withdraw his 1990 guilty plea and reinstate his lawful permanent resident status on the basis of the U.S. Supreme Court's ruling in Padilla v. State of Kentucky, 130 S. Ct. 1473, 1486 (2010). In Padilla, the Supreme Court determined that counsel's failure to advise a defendant of possible removal upon entering a guilty plea to a criminal charge constitutes ineffective assistance. The state court denied defendant's motion on March 12, 2012, and his appeal is pending before the Nevada Supreme Court.

On May 3, 2012, defendant filed a Motion for Request for Release Pending Trial. (ECF #20.) Defendant submitted letters from family and friends and was interviewed by Pretrial Services. Defendant informed Pretrial Services that he had moved to Oregon two weeks before his arrest to find work. Defendant has been living in the United States for nearly 20 years, and his wife and three children are U.S. citizens. Defendant also has family living in California and Arizona who are legal residents. In its report, Pretrial Services recommended that defendant be detained because

there were no conditions which will reasonably assure defendant's presence at trial due to the ICE detainer.

Judge Acosta held a detention hearing on May 9, 2012. On May 14, 2012, Judge Acosta issued an Order releasing defendant prior to his trial. (ECF #24.)  Judge Acosta concluded that there were no facts demonstrating that defendant was a flight risk, apart from his ICE detainer, and that factor alone was insufficient to prevent his pretrial release.  On the government's motion, I stayed the release order pending review. (ECF #25, 26.)  On May 22, 2012, I conducted oral argument on the government's motion, and orally reversed Judge Acosta's Release Order.  I also ordered defendant to remain in custody pending his trial, and advised counsel that I would issue this Opinion and Order separately.  (ECF #31.)

## DISCUSSION

In its current motion, the government makes two arguments: (1) the court should not have reopened the detention hearing; and (2) defendant is a flight risk, and there are no conditions that would reasonably assure his presence at trial.  Defendant argues that because he poses no risk of flight, the ICE detainer and reinstatement of removal order are insufficient to prevent his pretrial release.

Pursuant to 18 U.S.C. § 3145(a)(1), the government may seek review of a magistrate judge's order of release.  The district

court's review of a magistrate's order is *de novo*. <u>United States</u>

<u>v. Koenig</u>, 912 F.2d 1190, 1191 (9th Cir. 1990).

**I.    The Detention Hearing Was Properly Reopened.**

Under 18 U.S.C. § 3142(f), the court may reopen a detention

hearing at any time prior to trial if:

> the judicial officer finds that information exists that
> was not known to the movant at the time of the hearing
> that has a material bearing on the issue whether there
> are conditions of release that will reasonably assure the
> appearance of such person as required and the safety of
> any other person and the community.

Courts have interpreted this provision strictly. <u>United</u>

<u>States v. Ward</u>, 63 F.Supp.2d 1203, 1206-07 (C.D. Cal. 1999); <u>United</u>

<u>States v. Dillon</u>, 938 F.2d 1412, 1415 (1st Cir. 1991); <u>United</u>

<u>States v. Hare</u>, 873 F.2d 796 (5th Cir. 1989).  Thus, the moving

party must show: "1) information now exists that was not known to

the movant at the time of the initial detention hearing, and 2) the

new information is material to release conditions regarding flight

or dangerousness." <u>United States v. Tommie</u>, 2011 WL 2457521, *2

(D. Ariz. June 20, 2011); <u>accord</u> <u>United States v. Flores</u>, 856

F.Supp. 1400, 1405 (E.D. Cal. 1994).

During the May 9, 2012 hearing, Judge Acosta noted that

defendant's initial detention hearing was preliminary only, and

that consistent with the practice in the District of Oregon,

initial detention is provided with leave to reopen.

As defendant correctly argues, some of the discovery was not available at the time of the initial detention hearing. Specifically, the lengthy information provided by Pretrial Services concerning his ties to the community was not available previously. The information provided by defendant's Nevada counsel concerning the status of his state court proceedings raising <u>Padilla</u> arguments also was not available previously.  For all of these reasons, I reject the government's argument and conclude that the detention hearing was properly reopened.

**II.   <u>There Are No Conditions Which Will Reasonably Assure Defendant's Presence for Trial</u>.**

This case involves the vexing interplay of three statutes: (1) the Bail Reform Act, 18 U.S.C. § 3142, which provides the procedure for pre-trial release; (2) 8 U.S.C. § 1326, which prohibits the reentry of an alien who has been removed subsequent to an aggravated felony conviction; and (3) 8 U.S.C. § 1231(a)(5), which provides for the reinstatement of previous removal orders against aliens who have illegally reentered the United States.

As discussed in greater detail below, defendant argues that he must be released under the Bail Reform Act because he does not pose a flight risk, and therefore, I need not reach the issue of whether there are conditions I can impose which will assure his presence for trial.  The government maintains that because defendant's custody will be transferred to ICE and his removal will make him

unavailable for trial, there are *no* conditions which will reasonably assure his presence for trial.

It is clear that the practical effects of this case present the court with a legal conundrum: if defendant is released, he will likely be removed and evade prosecution; if defendant is not released, the presence of an ICE detainer and Reinstatement Order make it nearly impossible for aliens such as defendant to obtain pretrial release under the Bail Reform Act. As I see it, my task is to harmonize these statutes in a manner which gives effect to all three, in light of the facts on the record before me.

**A.    Standards.**

The Bail Reform Act of 1984 "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991); 18 U.S.C. § 3142(c)(2); United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor. Motamedi, 767 F.2d at 1405; United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990).

Section 3142(f) requires the court to hold a detention hearing if the defendant poses a flight risk or is a danger to the community. The government bears the burden of showing by a

preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. Gebro, 948 F.2d at 1121. In this case, there is no dispute that defendant is not a danger to the community; only the risk of flight is at issue. 18 U.S.C. § 3142(f)(2)(A).

Under § 3142(g), certain factors must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community. Gebro, 948 F.2d at 1121. Those factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of any danger to persons or the community if the defendant is released. 18 U.S.C. § 3142(g). When considering these factors, the evidence against the defendant is the least important. Gebro, 948 F.2d at 1121.

Under § 3142(e), if the court determines that no condition or combination of conditions will reasonably assure the appearance of the person, the defendant must be detained. 18 U.S.C. § 3142(e); Townsend, 897 F.2d at 993.

   **B.   Analysis.**

   Defendant argues his release is required because he is not a flight risk, and that I need not reach the issue of whether

10 - OPINION AND ORDER

conditions will assure his presence.  According to defendant, the concern that he will be removed by ICE is speculative because he is eligible for release, citing 8 U.S.C. § 1226(a) and (c).  Moreover, defendant maintains that the government has the ability to lift the ICE detainer.  Additionally, defendant argues his removal by ICE is not a voluntary act, and he should not be detained on that basis.

The government argues that there are no conditions which will reasonably assure defendant's presence for trial under the Bail Reform Act.  According to the government, his prior removal has been administratively reinstated, and the Reinstatement Order is not subject to further review.  The government maintains that the detainer requires defendant to be transferred to ICE custody if released and that defendant's removal will in all likelihood make him unavailable for trial.

If this were a case without an ICE detainer and Reinstatement Order, evaluating the § 3142(g) factors could result in defendant's release.  The offense charged here is for illegal reentry, and is not a crime of violence.  The weight of the evidence in this case is strong from the standpoint that defendant was deported in 1994 subsequent to his felony conviction, and that he has returned without permission.  This factor, however, is to be given the least weight in this analysis.  <u>Townsend</u>, 897 F.2d at 994.  Additionally, the government does not argue that defendant is a threat to the community.

The history and characteristics of defendant show that he has strong ties to Las Vegas, where his wife and most of his immediate family reside. The Pretrial Services report show that defendant's wife has a business that has been operating for 10 years. Also, defendant's only criminal history is the 1990 aggravated felony conviction. Indeed, at the May 22, hearing, the government agreed that absent the ICE detainer and valid removal order, conditions could likely be imposed which would reasonably assure his presence, such as electronic monitoring.

However, I cannot ignore the fact that defendant is subject to an ICE detainer and a Reinstatement Order which makes this case considerably more complicated. And, neither party suggests that I should not consider the ICE detainer and Reinstatement Order in my analysis. See Townsend, 897 F.2d at 994-95 (considering alien defendants' ties to the community and country when assessing their history and characteristics); United States v. Hir, 517 F.3d 1081, 1088-89 (9th Cir. 2008)(court may consider danger a defendant poses to a foreign community under § 3142(e)); see also United States v. Lozano, 2009 WL 3052279, *1 (Sept. 21, 2009), aff'd 2009 WL 3834081 (M.D. Ala. Nov. 16, 2009)(collecting cases); but see United States v. Marinez-Patino, 2011 WL 902466, *5-6 (N.D. Ill. March 14, 2011)(ICE detainer and removal order not among § 3142(g) factors, and collecting cases).

Defendant maintains that his removal is not as imminent as the government portrays because he will seek release on bond during his removal proceedings, citing 8 U.S.C. § 1226(a) and (c). Defendant has not demonstrated that he has the ability to post a bond under § 1226. Furthermore, defendant offers no support for his contention that the government has the ability to lift the detainer.

In this case, defendant's previous removal order has been administratively reinstated pursuant to 8 U.S.C § 1231. See Morales-Izquierdo v. Gonzales, 486 F.3d 484, 491 & 494 (9th Cir. 2007)(en banc)(discussing the distinction between removal and reinstatement, and that reinstatement orders are generally foreclosed from discretionary relief). And, § 1231 provides that the alien shall be detained while awaiting removal, and that removal will occur within 90 days. 8 U.S.C. § 1231(a)(1)(A) (providing that Attorney General shall remove the alien "within a period of 90 days"); Id. § 1231(a)(2)(during removal period, Attorney General "shall detain the alien"). Lastly, the ability to challenge reinstatement appears extremely limited. See Ixcot v. Holder, 646 F.3d 1202, 1207 (9th Cir. 2011)(aliens seeking asylum who have a fear of persecution or torture may seek withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and 8 C.F.R. §§ 241.8(e), 208.31).

Therefore, on the record before me, I conclude that defendant has not demonstrated that he will have an opportunity to seek release on bail under § 1226 or by some other means once he is transferred to ICE custody.[1]    Accordingly, I agree with the government that if defendant is transferred to ICE custody, his removal may render him unavailable for trial on August 14, 2012.

As the parties accurately indicate, varying interpretations of the Bail Reform Act have emerged from the handful of district courts nationwide who have squarely addressed whether pretrial release should be granted in light of an ICE detainer and removal order.  In short, some courts have determined that a defendant's *involuntary* removal pursuant to an ICE detainer does not create a serious risk of flight under § 3142, and does not prevent release.  See, e.g., United States v. Jocol-Alfaro, 2011 WL 6938349, *2 (N.D. Iowa Oct. 31, 2011).  Judge Acosta followed this line of cases. Other courts have determined that a defendant's ICE detainer is simply not among the § 3142 factors to consider.  United States v. Barrera-Omana, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009).  And still

---

[1]In rejecting an argument that due process required a hearing in the reinstatement context under 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8, the Morales-Izquierdo court noted:  "While aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country. . . . If Morales has a legitimate basis for challenging his prior removal order, he will be able to pursue it after he leaves the country, just like every other alien in his position." 486 F.3d at 498.

other courts have recognized that an ICE detainer creates a risk that the defendant will not appear, thus there are no conditions that could reasonably assure the defendant's presence for trial. United States v. Ong, 762 F.Supp.2d 1353, 1363 (N.D. Ga. 2010); United States v. Lozano, 2009 WL 3834081 (M.D. Ala. Nov. 16, 2009); see also United States v. Vencomo-Reyes, 2011 WL 6013546 (D. N.M. Nov. 18, 2011)(discussing the various interpretations of the Bail Reform Act in light of ICE detainers).

I have reviewed the cases cited by the parties and have given considerable thought to the practical implications of the interplay of 18 U.S.C. § 3142, 8 U.S.C. § 1326, and 8 U.S.C. § 1231.  In so doing, I am especially persuaded by the rationale of the district court in United States v. Lozano.  2009 WL 3834081.  I find that the Lozano opinion gives the most reasoned, practical interpretation of the Bail Reform Act, which at bottom is designed to assure a defendant's presence for trial while presuming a defendant's innocence.  As the Lozano court discussed, the government's interest in securing a defendant's appearance for trial is discussed in the body of numerous subsections of the Bail Reform Act, including § 3142(f).  Lozano, 2009 WL 3834081 at *2; 18 U.S.C. §§ 3142(c),(e), (f), (j).

Thus, I disagree with defendant and Judge Acosta's argument that this court should not reach the issue of whether conditions can be imposed which will reasonably assure his presence for trial,

15 - OPINION AND ORDER

without first establishing that his risk of flight is voluntary. To read the statute in this manner undermines the broader purpose the Bail Reform Act as a whole, and simultaneously overlooks the practical realities of defendant's removal under § 1231. As noted above, I must interpret the Bail Reform Act to avoid that result.

Thus, I am drawn to the analysis of Lazano, which I find appropriately takes into account the effects of defendant's ICE detainer and the valid, enforceable removal order under § 1231, and his prosecution for illegal reentry under § 1326. Like the defendant in Lozano, defendant here, if released, would be placed into ICE custody and await his removal, and likely avoid prosecution for his illegal reentry. And, once removed, there are no conditions which will reasonably assure defendant's presence for trial. The Lozano court reasoned as follows:

> Although there is no factual scenario under which Mr. Lozano could flee during his detention pursuant to the ICE detainer (absent escape from ICE's custody), there is similarly no factual scenario under which the court can reasonably assure Mr. Lozano's appearance at trial after his deportation. Essentially, by applying Mr. Lozano's interpretation, the court would give defendants charged with illegal reentry under 8 U.S.C. § 1326 a "get out of jail free" card. Congress could not possibly have intended the Bail Reform Act to nullify a substantive criminal statute. Lozano, 2009 WL 3834081 at *4 (footnote omitted).

I respectfully disagree with defendant and Judge Acosta that by denying pretrial release in this instance, I have effectively given definitive weight to the presence of ICE detainers in § 3142

hearings.   In this case, it is not exclusively the presence of an ICE detainer, but also the valid, enforceable removal order pursuant to § 1231, that informs my decision.  If defendant's removal was not final, I may have reached a different conclusion. See United States v. Montoya-Vasquez, 2009 WL 103596, *1 (D. Neb. 2009)(ICE detainer did not prevent release because defendant had opportunity to post bail and would appear before an Immigration Judge who would determine removal).

At the May 22 hearing, defendant attempted to factually distinguish Lozano, contending that defendant Lozano presented a danger to the community, and may otherwise have been detained. Additionally, defendant argued that Lozano preferred release to avoid prosecution because he was facing a lengthy sentence, unlike defendant here.   I disagree.   In the magistrate's ruling in that case, the court determined that the government had not met the clear and convincing standard for showing dangerousness.  Lozano, 2009 WL 3052279 at *4.   The district court did not disturb the dangerousness finding on review, nor did the district court premise its denial of pretrial release on Lozano's alleged dangerousness.

I also have considered defendant's collateral Nevada state court challenge to his underlying guilty plea and 1994 removal order under Padilla.  Padilla was announced in 2010; defendant's conviction became final in 1995.  To date, defendant's challenges

have been unsuccessful.  At the May 22 hearing, defendant conceded that he is not attacking his 1994 removal in this proceeding.  And, defendant conceded that the earliest the Nevada Supreme Court may resolve his appeal raising Padilla arguments would be the end of 2012.

As the parties have indicated, there is a split in the Circuit Courts of Appeal as to whether Padilla will be retroactively applied to cases that have become final prior to the date of that decision.  Compare United States v. Orocio, 645 F.3d 630, 635 (3rd Cir. 2011)(Padilla retroactive) with United States v. Amer, 2012 WL 1621005 (5th Cir. May 9, 2012)(Padilla not retroactive), United States v. Chang Hong, 671 F.3d 1147 (10th Cir. 2011)(same), and Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011), cert. granted, 2012 WL 1468539 (Aprel 30, 2012)(same).  The U.S. Supreme Court has granted certiorari and will decide the case next term. An answer from the Supreme Court is likely many months away.  If resolution of defendant's legal challenge was more certain or timely, I may have reached a different result.

This case presents an unfortunate mix of facts and law.  Yet, under defendant's interpretation of § 3142, an alien who has a valid, final removal order who is not a danger to the community could never be detained and would avoid prosecution for illegal reentry.  I simply cannot interpret the Bail Reform Act in a manner that nullifies the reentry statute.  Lozano, 2009 WL 3834081 at *4.

Accordingly, following the reasoning presented in <u>Lozano</u>, I find that the government has demonstrated by a preponderance of the evidence that there are no conditions which will reasonably assure defendant's presence for trial. Judge Acosta's order of release is reversed, and defendant is ordered to remain in custody until trial.

<u>**CONCLUSION**</u>

Based on the foregoing, I find that the government has demonstrated that no conditions or combination of conditions will reasonably assure defendant's presence for trial. Accordingly, Magistrate Judge John V. Acosta's Release Order (ECF #24) is REVERSED, plaintiff's Motion for Review and Revocation of Release Order (ECF #28) is GRANTED, and defendant is to remain in custody pending trial.

IT IS SO ORDERED.

DATED this 30 day of MAY, 2012.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge